**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | No. CV 01-01050-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Peabody Western Coal Company d/b/a Peabody Coal Company, | |
| Defendant. | |
| Navajo Nation | |
| Rule 19 Defendant | |

Currently before the Court is Rule 19 Defendant Navajo Nation's Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, Insufficiency of Process, Failure to State a Claim, Lack of Capacity, Failure to Exhaust Tribal Remedies and Failure to Join the United States as an Indispensable Party and Memorandum in Support Thereof (Dkt.#89); Navajo Nation's Motion to Strike Exhibits 9 and 16 of the EEOC's Response (Dkt.#124); the Equal Employment Opportunity Commission's ("EEOC") Motion to Strike Exhibits D and E of Peabody Coal's Response to the Navajo Nation's Motion to Dismiss (Dkt.#134-2); and the Navajo Nation's Motion for Leave to File Notice of

1  Supplemental Authority (Dkt.#140).   After reviewing the pleadings and holding oral
2  argument on September 18, 2006, the Court issues the following Order.

3  **I.   Procedural History**

4      On June 13, 2001 Plaintiff EEOC filed its Complaint against Defendant Peabody
5  Western Coal Company ("Defendant" or "Peabody Coal") asserting a violation of Title VII
6  of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), based
7  upon the preference afforded to hiring Navajos over non-Navajo Native Americans in coal
8  mining operations. (Dkt#1).   On March 29, 2002, Peabody Coal moved for summary
9  judgment on the grounds that: (1) the Navajo Nation is a necessary and indispensable party
10  to this litigation and its joinder not being feasible under Rule 19(b) because of the EEOC's
11  inability to bring an action against the Navajo Nation and, in the alternative, (2) the case
12  presenting a nonjusticiable political question. The Court agreed with Peabody Coal and held
13  that dismissal was proper because the Navajo Nation was a necessary and indispensable party
14  to the litigation and could not be made a party to the litigation by the EEOC. (Dkt.#59).  The
15  Court also granted summary judgment on the alternative basis that the case presents a
16  nonjusticiable political question.  (Id.).  The EEOC appealed this ruling on November 21,
17  2002.(Dkt.#61).

18      On June 3, 2005, the Ninth Circuit reversed and remanded this Court's decision,
19  holding that it would not reach the merits of the EEOC's claims but that the Navajo Nation
20  is a necessary party to the action and that it is feasible to join it.  EEOC v. Peabody Western
21  Coal Company, 400 F.3d 774 (9th Cir. 2005).   The Ninth Circuit also held that the EEOC's
22  claim is not precluded as a nonjusticiable political question. (Dkt.#65).  On June 17, 2005,
23  the EEOC filed its Amended Complaint naming both Peabody Coal and the Navajo Nation
24  as Defendants. (Dkt.#67).  The Amended Complaint seeks monetary relief against Peabody
25  Coal and a "permanent injunction enjoining Peabody... and all persons in active concert or
26  participation with it, from engaging in discrimination on the basis of national origin."
27  (Amended Complaint, Prayer for Relief ,¶A).  The Amended Complaint expressly joins the
28  Navajo Nation to the suit under Rule 19.  (Id. at ¶9).

1    On September 16, 2005, Defendant Peabody Coal filed its Motion to Stay Proceedings

2    pending Petition of Writ of Certiorari. (Dkt.#76).  On October 4, 2005, this Court granted

3    Peabody Coal's Motion to Stay the proceedings pending the Supreme Court's disposition of

4    its Petition and/or issuance of the mandate of the Supreme Court. (Dkt#81).  On February 2,

5    2006, the Court was notified that the Petition for Certiorari was denied, thus the Court

6    directed the Navajo Nation to file its initial pleading.  (Dkt.#86).  On February 17, 2006, the

7    Navajo Nation's filed its instant Motion to dismiss. (Dkt.#89).  The Court granted the EEOC

8    and Peabody Coal two extensions to file any respective responses and granted the EEOC's

9    request to conduct discovery regarding certain matters raised in the Navajo Nation's Motion,

10   most notably the Secretary of the Interior's ("SOI" of the "Secretary") involvement in the

11   drafting and formulations of the lease agreements that are at issue in this litigation.

12   (Dkt.#108,114).   Both the EEOC and Peabody Coal filed have filed their respective

13   Responses to the Motion to Dismiss and the Navajo Nation filed its Reply.

14   **II.    Motions to Strike**

15        **A.    Navajo Nation's Motion to Strike**

16        The Navajo Nation moves to strike exhibits 9 and 16 presented in the EEOC's

17   Response to the Navajo Nation's Motion to dismiss.  The Navajo Nation objects to Exhibit

18   9, which is purported to be a document or report from Theodore W. Taylor, Assistant to the

19   Commissioner Bureau of Indian Affairs.  (EEOC Response, Exhibit 9).  Specifically, the

20   Navajo Nation contends that this report is unauthenticated hearsay.  See Orr v. Bank of

21   America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (stating that authentication is

22   "evidence sufficient to support a finding that the matter in question is what its proponent

23   claims.").   The EEOC further argues that doubt surrounding the document's authenticity is

24   created by the fact that on page 2 of the document there appears to be a handwritten notation

25   stating that the documents were "pulled together and final draft prepared by Theodore W.

26   Taylor, B/A."  In response the EEOC offers the declaration of EEOC Librarian Holly Wilson

27   to support the document's authenticity.  (EEOC Response to Motion to Strike, Exhibit 1).

28   Ms. Wilson states that while employed with the EEOC she located this report through the

catalogue of the library of the United States Department of Interior and that the author identified is Theodore W. Taylor.  While, Ms. Wilson, states that she identified such a document within the Department of Interior library that was authored by Theodore W. Taylor, there is still doubt as to whether the version that is offered as Exhibit 9 is the same that is identified by Ms. Wilson.  Notably, there is no explanation as to the handwritten note on Exhibit 9 which suggests that the exhibit may have simply been "pulled together" as a draft of the final version.  With such doubt surrounding the document's authenticity, the Court will not consider it as evidence.

In addition, the Navajo Nation moves to strike the reference in Footnote 5 on page 27 of the EEOC's Response as well as Exhibit 16 of the EEOC's Response.  Footnote 5 consists of a reference to two newspaper articles regarding the closure of the Black Mesa Mine on the Navajo reservation as a result of the closure of the Mohave Generating Station and Exhibit 16 appears to be a website from Salt River Project describing the Navajo Generating Station.  The Navajo Nation objects to this evidence on the grounds that the references to the articles and website printout constitute unauthenticated hearsay.   In response to the Navajo Nation's motion, the EEOC states that although the Navajo Nation objects to these references and exhibit, the EEOC does not dispute the factual information underlying these exhibits such as the closure of the Mohave Generating Station and the significant impact of such closure on the Navajo Nation.  As such, the EEOC contends that the Court can take judicial notice of these facts.  See Rule 201(b) Fed.R.Evid. (stating "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.).

However, the EEOC's request ignores that newspaper articles constitute inadmissible hearsay as to their content. E.g. Larez v. City of Los Angeles, 946 F.2d 630, 642-43 (9th Cir. 1991).  In addition, the facts that the EEOC requests that this Court take judicial notice of do appear to be subject to dispute and are not generally known within the jurisdiction of this

1    Court. (Navajo Nation Reply to Motion to Strike, Exhibit A).  As such Exhibits 9 and 16 will

2    be struck and footnote 5 will not be considered by this Court.

3         **B.    EEOC's Motion to Strike**

4         The EEOC moves to strike exhibits D and E submitted by Peabody Coal in its

5    response to the Navajo Nation's Motion to Dismiss.  The EEOC takes issue with the

6    authenticity and relevance of these documents.

7         First, with respect to the authenticity of these documents, it appears that these

8    documents are what the proponent claims them to be.  Specifically, Peabody Coal relates that

9    Exhibits D and E are forms from the Bureau of Indian Affairs appearing in the appendix of

10   the treatise, "Natural Resources Law on American Lands."   The EEOC contests their

11   authenticity as sample forms appearing in the back of the above treatise.  In response,

12   Peabody Coal provides the affidavit of Gregory Leisse, an attorney in good standing with the

13   Arizona State bar, identifying these forms as forms used in the above treatise. (Peabody Coal

14   Response to Motion to Strike, Exhibit B and B1).  This Court finds that these documents

15   which are held out to be forms obtained from the Bureau of Indian Affairs and attached in

16   the appendix of the treatise of "Natural Resources Law on American Lands" are properly

17   authenticated.

18        Second, contrary to the EEOC's position, these documents are relevant to these

19   proceedings.  Relevant evidence is "evidence having any tendency to make the existence of

20   any fact that is of consequence to the determination of the action more probable or less

21   probable..." Peabody Coal cites these forms as evidence that such forms were consulted by

22   the Department of Interior in implementing the leases at issue, described below.  Based upon

23   the declaration and deposition testimony of the former SOI these form leases appear to

24   provide probative value regarding the leases at issue in this case, thus the Court finds these

25   exhibits to be relevant to these proceedings.

26   **III.   Background Regarding Navajo Employment Preference**

27        Peabody Coal performs mining operations on the Navajo and Hopi reservations in

28   Arizona pursuant to lease agreements.  Most notably, Peabody Coal's predecessor in interest

Sentry Royal Company, entered into two such leases with the Navajo Nation: (1) the 1964 lease referred to as the 8580 lease and (2) the 1966 lease referred to as the 9910 lease.  Both leases possess provisions requiring that preference in employment be afforded to members of the Navajo Nation.  For instance the 8580 lease provides in pertinent part:

> Lessee agrees to employ Navajo Indians when available in all positions, for which, in the judgment of Lessee, they are qualified, and to pay prevailing wages to such Navajo employees and to utilize services of Navajo contractors where feasible.
> Lessee shall make a special effort to work Navajo Indians into skilled, technical and other higher jobs in connection with Lessee's operations under this Lease...

(EEOC Response to Navajo Nation Motion to Dismiss, Exhibit 13)

In addition, the 9910 lease provides a virtually identical provision with the only exception being that the Lessee has the option to extend this preference to Hopi Indians as well. (EEOC Response, Exhibit 10).  These Navajo preference provisions are at the heart of this litigation as it is the EEOC's position that Peabody Coal is unlawfully discriminating against non-Navajo Native Americans when it applies and enforces this provision pursuant to the terms of the leases above.

Both lease agreements also possess provisions implicating the Secretary's role in the enforcement of such lease provisions.  For instance Article XVI of the 8580 lease provides in pertinent part:

> When, in the opinion of the Mining Engineer of the Navajo Tribe and the Secretary of the Interior, before restrictions are removed, there has been a violation of any of the terms and conditions of this lease, the Secretary of the Interior and the Navajo Tribe shall have the right ... to declare this lease null and void...

(EEOC Response, Exhibit 13).

Again, the 9910 lease contains an identical provision providing the Secretary with authority with respect to lease termination in the event of non-compliance. (EEOC Response, Exhibit 10).

In addition to the Secretary's authority with respect to cancellation with these leases, the SOI appears to have played a substantial role in the implementation of the 8580 and 9910 leases.  For instance, the Secretary at the time of the leases establishment, Mr. Stewart L. Udall, provides his declaration and testimony stating that he approved the lease agreements.

1   (Navajo Nation Motion, Exhibit A, ¶ 2; Peabody Coal Response, Exhibit A, p.24, ll.9-14;).

2   Specifically, Secretary Udall provides his declaration stating that these leases were drafted

3   by the Department of Interior, approved by the Secretary of Interior and that the Department

4   of Interior required that each lease contain a Navajo preference in employment provision.

5   (Id. at ¶ 5,6,7).  Thus, in addition to the Secretary's power of cancellation of these leases in

6   the event of non-compliance, the evidence reveals that the Secretary required the leases to

7   contain Navajo preference provisions prior to his approval.  In addition, to the Secretary's

8   involvement in these leases, it appears that the Secretary played and plays a similar role in

9   other leases between the Navajo Nation and private business entities. (Navajo Nation Motion

10   to Dismiss, Exhibit 2).

11   **IV.**    **Conversion of Motion to Dismiss to Motion for Summary Judgment**

12        The Navajo Nation has presented multiple 12(b) theories in support of its position that

13   this matter be dismissed, including lack of subject matter jurisdiction, lack of personal

14   jurisdiction, failure to state a claim and failure to join a necessary and indispensable party.

15   The Navajo Nation, Peabody Coal and the EEOC have presented multiple exhibits in support

16   of their respective positions.   In addition, the Court granted the EEOC's request to engage

17   in discovery regarding issues raised in the Navajo Nation's motion to dismiss, which included

18   the deposition testimony of former Secretary Udall regarding his involvement in the

19   implementation of the lease agreements that possess the Navajo employment preference

20   provisions at issue.  (Dkt.#108,114).  Because of the attachment of such exhibits in support

21   of the Navajo Nation's motion which includes a 12(b)(6) argument, the Court must determine

22   if conversion of the motion to dismiss to a motion for summary judgment is necessary.  As

23   a general matter, a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6)

24   must be treated as a motion for summary judgment under Rule 56 Fed.R.Civ.P. if either party

25   presents materials outside the pleadings. <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir.

26   1996).  Here, the Court has considered such exhibits in support of the Navajo Nation's

27   argument regarding dismissal based upon the Navajo Nation's 12(b)(6) theory. Specifically,

28   the Navajo Nation, with Peabody Coal joining, has argued that the conduct at issue in this

1   litigation is expressly exempted from the scope of Title VII because of the impact and

2   relevance of the Navajo-Hopi Rehabilitation Act of 1950, 25 U.S.C. § 631-638

3   (Rehabilitation Act).  Although the Navajo Nation argues that the Rehabilitation Act deprives

4   this Court of subject matter jurisdiction, the proper inquiry is whether the Rehabilitation Act

5   authorizes the Navajo employment preference at issue, thus suggesting that the EEOC has

6   failed to state a claim.  Because the Court has received and accepted exhibits from all parties

7   regarding this issue, it is proper to convert the Navajo Nation's motion to dismiss into a

8   motion for summary judgment.  See Rule 12(b)(6) Fed.R.Civ.P. (stating if matters outside

9   the pleadings are presented pursuant to 12(b)(6) theory and not excluded by the court, the

10  motion shall be treated as Rule 56 motion and all persons shall be given a reasonable

11  opportunity to present material pertinent).  In the Ninth Circuit, where the parties have been

12  notified that the court is considering material beyond the pleadings, the parties will have

13  received effective notice of the conversion to summary judgment.  Grove v. Meadh Sch. Dist.

14  No. 354, 753 F.2d 1528, 1533 (9th Cir. 1985), *cert denied*, 474 U.S. 826 (1985).  The

15  submission of such matters outside the pleadings to the court provides sufficient notice.  Id.

16   Thus, the Court hereby converts the Navajo Nation's motion to dismiss into a motion for

17  summary judgment.

18      A motion for summary judgment may be granted only if the evidence shows "that

19  there is no genuine issue as to any material fact and that the moving party is entitled to

20  judgment as a matter of law." Fed.R.Civ.P. 56(c).  To defeat the motion, the non-moving

21  party must show that there are genuine factual issues "that properly can be resolved only be

22  a finder of fact because they may reasonably be resolved in favor of either party." Anderson

23  v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  The party opposing

24  summary judgment "may not rest upon the mere allegations or denials of [the party's]

25  pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."

26  Rule 56(e).  See Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87

27  106 S.Ct. 1348 (1986).  The evidence must be viewed in the light most favorable to the

28  nonmoving party.  Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

**V.      Impact of Ninth Circuit Ruling in this Case.**

As discussed above, the Ninth Circuit reversed and remanded this Court's original decision with its opinion filed on March 10, 2005. Peabody W. Coal, 400 F.3d 774 (9th Cir. 2005).  The Ninth Circuit held that the Navajo Nation is a necessary party and can be joined under Rule 19 of the Federal Rules of Civil Procedure.  The Ninth Circuit held that "where the EEOC asserts a cause of action against Peabody and seeks no affirmative relief against the [Navajo] Nation, joinder of the [Navajo] Nation under Rule 19 is not prevented by the fact that the EEOC cannot state a cause of action against it.  Because the EEOC is an agency of the United States, the [Navajo] Nation cannot object to joinder based on sovereign immunity... We therefore hold that joinder of the Nation is feasible."  Id. at 778.

As discussed below, although the Ninth Circuit has addressed the issue of joinder of the Navajo Nation to this suit, this case is in a different posture with the filing of an Amended Complaint and the addition of the Navajo Nation as a party to this litigation.  However, with respect to those arguments that fall within the scope of previous consideration of the Ninth Circuit, this Court will not depart from such binding precedent.  Yong v. I.N.S., 208 F.3d 1116, 1119 n.2 (9th Cir. 2000); see also Poland v. Stewart, 169 F.3d 573, 582-83 (9th Cir. 1999) (noting that  Ninth Circuit rulings can only be changed by an en banc court or subsequent Supreme Court authority).  For instance, in its Motion, the Navajo Nation argues that the protection of sovereign immunity protects it from being joined as a party to this suit.  However, although the Navajo Nation was not a party to this litigation when this issue was before the Ninth Circuit, the Ninth Circuit has squarely rejected this argument.  See Peabody W. Coal, 400 F.3d at 781 (holding that "[b]ecause the EEOC is an agency of the United States, 'tribal sovereign immunity does not apply in suits brought by the EEOC.'").  However, while this issue has been addressed by the Ninth Circuit, the Navajo Nation and Peabody Coal assert arguments, addressed below, that are unique and have not been squarely addressed by the Ninth Circuit.

**VI.     Argument**

> **A.      Navajo Nation as Necessary and Indispensable Party.**

1    It is undisputed that the Navajo Nation is a necessary party to this litigation pursuant

2    to Rule 19(a) of the Federal Rules of Civil Procedure. Id. at 780. However, because of the

3    relief sought by the Amended Complaint, the Navajo Nation argues that Rule 19 mandates

4    dismissal because it cannot be joined to this suit and is an indispensable party.

5    As a preliminary matter, it is important to keep in mind that the Ninth Circuit in this

6    case restricted its holding regarding the feasibility of joinder of the Navajo Nation to

7    instances where no affirmative relief is sought against it. Specifically, the Ninth Circuit

8    noted that it has consistently held that the "inability to state a direct cause of action against

9    an absentee does not prevent the absentee's joinder under Rule 19." Id. (citations omitted).

10   Moreover, the Ninth Circuit stated "...the EEOC has no claim against the party it seeks to join

11   and is not seeking any affirmative relief directly from that party [the Navajo Nation]. Joinder

12   is necessary for the 'sole purpose' of effecting complete relief between the parties ... by

13   ensuring that both Peabody Coal and that Nation are bound to any judgment upholding or

14   striking down the challenged lease provision." Id. at 783. However, a reading of the

15   Amended Complaint filed after the Ninth Circuit's ruling belies the notion that the EEOC is

16   not seeking any affirmative relief against the Navajo Nation. The Amended Complaint seeks

17   "a permanent injunction enjoining Peabody... and all person in active concert or participation

18   with it, from engaging in discrimination on the basis of national origin." (Amended

19   Complaint, Prayer for Relief ¶ A). While the Navajo Nation is not expressly named as a

20   party to be enjoined from engaging in discrimination in violation of Title VII principles, there

21   can be no doubt that the Navajo Nation falls within the scope of affirmative relief sought by

22   the EEOC. It has been well established since the beginning of this litigation that the Navajo

23   Nation and Peabody Coal entered into the lease agreements, the 8580 and 9910, that are at

24   the heart of this litigation. Should the EEOC prevail in this suit and obtain the broad relief

25   sought, the Navajo Nation would then be enjoined from implementing and requiring such

26   lease provisions in the future as it would already be subject to injunctive relief from this

27   Court based upon the determination that such provisions are contrary to Title VII. As such,

28

1  there can be little doubt that the EEOC seeks affirmative relief not only against Peabody Coal
2  but the Navajo Nation as well.

3      The significance of such affirmative relief is that it precludes the Navajo Nation from
4  being joined in this suit.  While it is well established that the Navajo Nation is not protected
5  by sovereign immunity from suit by the EEOC, it is also clear that "an Indian tribe is
6  specifically exempt from the definition of 'employer,' and thus Title VII does not apply to
7  Indian tribes when they act as employers." Id. at 781 (citing 42 U.S.C. § 2000e(b)).  As such,
8  the EEOC's requested relief against the Navajo Nation based upon violations of Title VII
9  cannot stand.  Therefore, in taking the Amended Complaint at face value, the Navajo Nation
10  cannot be joined to this suit based upon the affirmative relief sought by the EEOC.

11      With the determination that the Navajo Nation is a necessary party that cannot be
12  joined based upon the affirmative relief sought against it, this Court is left with the
13  determination of whether the Navajo Nation is an indispensable party to this litigation
14  pursuant to Rule 19(b) Fed.R.Civ.P.  (citations omitted).  "A party is indispensable if in
15  'equity and good conscience,' the court should not allow the action to proceed in its
16  absence." Dawavendewa v. Salt River Project Agr. Imp. and Power Dist, 276 F.3d 1150,
17  1161 (9th Cir. 2002) (Dawavendewa II).  To make this determination, courts balance four
18  factors: (1) the prejudice to any party or the absent party; (2) whether relief can be shaped
19  to lessen prejudice; (3) whether an adequate remedy, even if not complete, can be awarded
20  without the absent party; and (4) whether there exists an alternative forum. Id.   This Court
21  originally determined that in balancing these four factors that the Navajo Nation is an
22  indispensable party. EEOC v. Peabody Coal Co., 214 F.R.D. 549, 559-60 (D.Ariz. 2002),
23  rev'd on other grounds, Peabody W. Coal, 400 F.3d 744.  The Court makes the same
24  determination again based upon the affirmative relief sought against the Navajo Nation in
25  this suit.  As to the first factor, in the absence of the Navajo Nation, the Navajo Nation would
26  be prejudiced from protecting its interest with respect to the viability of the lease provisions
27  at issue and the affirmative relief sought against it.  Second, the relief could not be shaped
28  to lessen any prejudice against the Navajo Nation in its absence.  In the event that the EEOC

were to succeed in its suit against Peabody Coal, such relief would clearly come at the expense of the Navajo Nation.  Third, this line of reasoning also rebuts the possibility of an adequate remedy in the Navajo Nation's absence.  The EEOC's broadly requested relief eliminates the possibility of such a remedy as it seeks to enjoin Peabody Coal as well as the Navajo Nation from complying with the Navajo preference provisions at issue.  With the Navajo Nation's absence, there is no way to shape such relief.   Lastly, as noted in this Court's original decision, the only factor that does not favor dismissal is that there remains no alternative forum for the EEOC to proceed should this case be dismissed.  Peabody Coal, 214 F.R.D. at 560.  However, again, while recognizing the effects of such a dismissal, this Court finds that in balancing these four factors, that dismissal is appropriate.

### B.    Rules Enabling Act and Title VII Requirements

In addition to the consequences resulting from the affirmative relief sought against the Navajo Nation with respect to Rule 19, this affirmative relief also raises further issue with respect to the viability of the EEOC's suit against Peabody Coal and the Navajo Nation.

### (1)    Rules Enabling Act

The Rule Enabling Act of 28 U.S.C. § 2072(a) provides that the Supreme Court "shall have the power to prescribe general rules of practice and procedure...for cases in the United States district courts."  In addition § 2072(b) relates "such rules shall not abridge, enlarge or modify any substantive right..."  Here, based upon the relief sought by the EEOC and the impact created by a favorable ruling for the EEOC it is apparent to this Court that the EEOC's requested relief is inconsistent with its substantive rights.

It is undisputed that the EEOC can assert no cause of action against the Navajo Nation.  Peabody W. Coal, 400 F.3d at 781 (citing 42 U.S.C. § 2000e(b)).  However, a plain reading of the Amended Complaint indicates that despite the inability to seek relief from the Navajo Nation, the EEOC seeks to enjoin the Navajo Nation from complying and enforcing the Navajo employment preference provisions at issue.  This relief is inconsistent with the EEOC's substantive rights under Title VII and furthermore, is inconsistent with the Ninth Circuit's holding in this case.  The Ninth Circuit in this case when addressing the argument

set forth by Peabody Coal regarding the impact of the Rules Enabling Act held in pertinent part:

> Because the EEOC is not seeking to hold the Navajo Nation liable under Title VII, we reject Peabody's argument that our reading or Rule 19 conflicts with the Rules Enabling Act's restriction that the federal rules of civil procedure "shall not abridge, enlarge or modify any substantive right." Joinder of the Nation does not, and cannot, create any substantive rights that the EEOC may enforce against the Nation, and the EEOC does not contend otherwise.

Id. at 783.

However, now with the benefit of the Amended Complaint asserted by the EEOC, it appears to this Court that the EEOC is in fact seeking to enlarge or modify its substantive rights under Title VII against the Navajo Nation. Because such a claim and affirmative relief is inconsistent with the EEOC's substantive rights against the Navajo Nation, it is not viable.

### (2)     Title VII Requirements of Suit

In addition, the affirmative relief sought by the EEOC also raises considerations as to the proper methods of bringing such relief against the Navajo Nation. For instance, pursuant to 42 U.S.C. § 2000e-5(f)(1), in suits against government respondents, it is the Attorney General that is to bring suit, not the EEOC. However, here, it is the EEOC that is seeking affirmative relief against the Navajo Nation. Peabody Coal advanced a similar argument to the Ninth Circuit in this case; however, it was rejected on the basis that this requirement was not necessary as the Navajo Nation was being joined to the litigation in name only to effectuate complete relief. Id. at 781. However, now with the benefit of the filing of the Amended Complaint and limited discovery, it is apparent to this Court that the EEOC is not merely seeking relief against Peabody Coal, but all parties acting in concert with it, which includes the Navajo Nation. In such instances, this relief is not to be asserted by the Navajo Nation, but the Attorney General after conciliation efforts between the EEOC and the Navajo Nation, a government respondent under § 2000e-5(f)(1). As such, this analysis also favors dismissal of the Amended Complaint against the Navajo Nation and in turn against Peabody Coal as the suit cannot proceed without the joinder of the Navajo Nation.

### C.     Relevance of Rehabilitation Act

1    The Navajo Nation argues that even if EEOC's Complaint were somehow permissible

2   against it, the EEOC's Title VII suit fails because the conduct at issue is exempted from Title

3   VII by the Navajo-Hopi Rehabilitation Act of 1950, 25 U.S.C. § 631-638.   The

4   Rehabilitation Act was passed in 1950 in response to the poor economic and overall living

5   conditions on the Navajo and Hopi reservations.   The Act authorizes the Secretary of the

6   Interior to undertake and implement "a program of basic improvements for the conservation

7   and development of the resources of the Navajo and Hopi Indians, the more productive

8   employment of their manpower, and the supplying of means to be used in their rehabilitation,

9   whether on or off the Navajo and Hopi Reservations."   Moreover, according to the Secretary

10  at the time of the implementation of the leases at issue, coal-leasing was one of the

11  centerpieces under the Rehabilitation Act to assist with the means of rehabilitation.   (Navajo

12  Nation Motion, Exhibit 1, Declaration of Stewart Udall, ¶3) see also Navajo Nation v. United

13  States, 68 Fed.Cl. 805, 812 (Fed Ct.Cl. 2005); Austin v. Andrus, 638 F.2d 113, 114 (9th Cir.

14  1981) (noting that Rehabilitation Act provided funds for surveys and studies of coal on

15  Navajo and Hopi lands).   In addition, the Navajo Nation notes that § 633 of the

16  Rehabilitation Act possesses a tribal preference provision.   Specifically, § 633 relates that

17  "Navajo and Hopi Indians shall be given, whenever practicable, preference in employment

18  on all projects undertaken pursuant to this subchapter..."   In addition, the Rehabilitation Act

19  has been amended twice since the enactment of Title VII in 1964; however, this tribal

20  preference provision has yet to be modified or removed by Congress.   See 25 U.S.C. §§ 639,

21  640.   The Navajo Nation, with Peabody Coal joining, argues that the Rehabilitation Act's

22  tribal preference provision can and should be read harmoniously with § 2000e-2(i) of Title

23  VII, which possesses a general Indian Preference exemption for employers who provide

24  preferential treatment to Indians living on or near a reservation.

25    In response, the EEOC sets forth two arguments.   First, the EEOC contends that the

26  Rehabilitation Act is not applicable as it does not relate to coal leases, such as the 8580 and

27  9910 leases. (EEOC Response, Exhibit 8).   Second, the EEOC argues that Title VII is clear

28  that tribe specific employment provision are unlawful.   With respect to the EEOC's first

1   argument that the Rehabilitation Act does not apply to the coal leases at issue, it is clear to

2   this Court that the discovery requested by the EEOC and performed in this case simply does

3   not support such a position.  As mentioned above, Secretary Udall, provides his declaration

4   stating that the Rehabilitation Act played a central role in the implementation of such leases.

5   (Navajo Nation Motion, Exhibit 1 ¶3).  In addition, Secretary Udall relates that the Navajo

6   preference provisions were implemented in such leases pursuant to the terms of the

7   Rehabilitation Act. (Id. ¶5). Finally, Secretary Udall's deposition testimony further supports

8   the key role the Rehabilitation Act played in the leases and their provision.  (Peabody Coal

9   Response to Navajo Nation Motion to Dismiss, Exhibit A, pp.37-38, ll.21-4).  Based upon

10  this evidence it is apparent that the leases at issue are governed by the Rehabilitation Act.

11          Second, in this Court's view, the Rehabilitation Act expressly approves the type of

12  tribal preference provision at issue in this case.  Specifically, as noted above § 633 of the

13  Rehabilitation Act "Navajo and Hopi Indians shall be given, whenever practicable,

14  preference in employment on all projects undertaken pursuant to this subchapter..."  The

15  Court finds that such preference invoked in projects governed by the Rehabilitation Act, such

16  as in this case, controls and is not inconsistent with Title VII's Indian Preferences exemption

17  pursuant to § 2000e-2(i), which applies broadly to Indians rather than specific tribes.  In

18  Dawavendewa v. Salt River Project Agr. Imp. and Power Dist. 154 F.3d 1117, 1123 (9th Cir.

19  1998) the Ninth Circuit held that Title VII's Indian Preferences exemption, § 2000e-2(i),

20  provides against any preference given to one specific Indian tribe over another.  The Ninth

21  Circuit in Dawavendewa I rejected the district court's reliance on the Indian Self-

22  Determination and Education Assistance Act (ISDA) as authorizing the specific tribal

23  employment preference given by the employer in that case, the Salt River Project.  Id. at

24  1122-23.  The ISDA, which was implemented to allow tribes to contract with with the

25  Department of Interior and Health and Human Services to administer certain programs

26  themselves, also possessed a provision stating that "tribal employment or contact preference

27  law adopted by such tribe will govern." Id. at 1122. The Ninth Circuit rejected the argument

28  that this provision, implemented as an amendment in 1994, provided support that the Indian

Preferences exemption of Title VII allowed for specific tribal employment preference. Notably, the Ninth Circuit stated that there was no contention that the employer, SRP, was acting pursuant to a self-determination contract subject to the ISDA. Id. at 1123. The situation in this case is quite different. Here, the employer Peabody Coal engaged in lease agreements with the Navajo Nation that are governed and implemented pursuant to the Rehabilitation Act, which has provided for specific tribal preference since 1950. In addition, the Rehabilitation Act has been amended twice since the enactment of Title VII in 1964, each time silent as to any modification or repeal of such specific tribal employment preference provisions in § 633. In this Court's view, the Rehabilitation Act tribal preference provision can and should be read harmoniously with Title VII's Indian Preferences exemption. Specifically, the Rehabilitation Act applies only in limited circumstances and addresses specific tribal employment preference whereas Title VII's Indian Preferences exemption applies broadly to all other such provisions that are implemented outside the scope of the Rehabilitation Act. As such, the two can be read together. See Morton v. Mancari, 417 U.S. 535, 550, 94 S.Ct. 2474 (1974) (stating that repeal by implication is only appropriate where statutes are irreconcilable and that where there is no clear intention otherwise, specific statute will not be controlled or nullified by general one). Thus, this Court finds that the Rehabilitation Act and Title VII can be read together harmoniously. Because the lease agreements are governed by the Rehabilitation Act and authorize the Navajo employment preference provisions that are at issue, the EEOC's suit fails to state a claim.

### D.    Secretary of Interior as Necessary and Indispensable Party

Finally, in the alternative, this Court finds that even if the EEOC's suit does not seek any affirmative relief against the Navajo Nation and is not contrary to the specific provisions of the Rehabilitation Act, the EEOC's suit fails because the Secretary of Interior ("Secretary" or "SOI") is a necessary party that cannot be joined to this litigation and is indispensable to this litigation. Both the Navajo Nation and Peabody Coal have set forth persuasive argument that because the SOI was also involved in the drafting and implementation of the leases as well as still plays an integral role in these leases that the SOI is a necessary and indispensable

party to this litigation.  In addition, the SOI cannot be joined to this lawsuit as the SOI is immune from suit, absent consent.

As referenced above, Rule 19 of the Federal Rules of Civil Procedure requires that a court determine (1) whether an absent party is necessary to this action; and then (2) if the party is necessary but cannot be joined, whether the party is indispensable such that in "equity and good conscience" the suit should be dismissed.  Confederated Tribes v. Lujan, 928 F.2d 1496, 1498 (9th Cir. 1991).  This two prong test is actually made up three successive factors: first, the court must determine if the absent party is necessary; second, the court must determine whether joinder is feasible; and third, if joinder is not feasible, the court must determine if the party is an indispensable party.  Peabody W. Coal, 400 F.3d at 779 (citing United States v. Bowen, 172 F.3d 682, 688 (9th Cir. 1999).

**(1)     Secretary of Interior: Necessary Party Analysis**

Rule 19(a) provides in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already existing parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

**(a)     Complete Relief Cannot be Accorded in the Secretary's Absence**

The first prong of the necessary party analysis deals with whether complete relief can be made in the SOI's absence.  The Navajo Nation and Peabody Coal argue that complete relief cannot be afforded in this suit without the Secretary's presence in this suit. These parties again cite the Secretary's involvement in the implementation of the leases at issue and authority to cancel such leases in the event of non-compliance.     In response to the Secretary's role in the implementation of the leases as well the Navajo preference provisions, the EEOC contends that complete relief can be accorded among the existing parties without the Secretary's involvement.  The EEOC cites the Ninth Circuit's holding in this case to

1   exemplify that no affirmative relief has been asserted against the Navajo Nation.  Rather, the

2   "[j]oinder of the Navajo Nation only renders the final judgment of this Court binding on the

3   Nation under the doctrine of res judicata.... Should the EEOC prevail, complete relief will

4   be accorded to the parties by the award of monetary, declaratory and injunctive relief from

5   Peabody, and the res judicata effect of the decision on the Navajo Nation."  (EEOC

6   Response, p. 21).  Thus, the EEOC contends that complete relief can be accorded among the

7   existing parties because the EEOC does not seek any relief beyond that stated above.

8          Notwithstanding that the Court disagrees with the EEOC regarding the lack of any

9   affirmative relief asserted against the Navajo Nation, the EEOC's argument ignores the

10   current posture of this litigation.  The EEOC has asserted direct claims of relief against

11   Peabody Coal, and at the very least joined the Navajo Nation.  Even if Peabody Coal is the

12   only defendant in this litigation facing affirmative relief, Peabody Coal is certainly permitted

13   to raise any defenses or counterclaims or cross-claims that are applicable in this litigation.

14   Notably, because of the Secretary's involvement in the formation and implementation of

15   these leases, it is not unreasonable, given the circumstances, that Peabody Coal could assert

16   a cross-claim against the SOI were the Secretary a party to this litigation.  For example,

17   based upon the record presented, the SOI required and even drafted the leases with the

18   Navajo employment preference provisions as a requirement of the leases.

19          As noted by Peabody Coal, a similar situation was presented in Monterey Mechanical

20   Co. v. Wilson, 125 F.3d 702 (9th Cir. 1997).  In Monterey, a contractor brought suit against

21   trustees of California State University seeking declaratory, injunctive and monetary relief

22   on the basis that the state statute that required him to discriminate on the basis of race when

23   hiring subcontractors violated the Equal Protection Clause.  Id. at 705.  The district court

24   denied his request for preliminary injunction and plaintiff appealed.  On appeal, the Ninth

25   Circuit held that the plaintiff did possess the requisite standing to assert a claim against the

26   government even though plaintiff was not being directly discriminated against, but rather was

27   the individual that was required to discriminate based upon race when retaining

28   subcontractors.  In finding that the plaintiff possessed the requisite standing to sue, the Ninth

Circuit stated "[a] 'law compelling persons to discriminate against other persons because of race' is a palpable violation of the Fourteenth Amendment regardless of whether the persons required to discriminate would have acted the same way regardless of the law. The contractor required to discriminate also suffers injury in fact because the statute exposes him to liability for discrimination." Id. at 707-08.

A similar situation is presented here. If the SOI were a party to this litigation, it is feasible that Peabody Coal would assert a cross-claim against the SOI based upon the fact that the Secretary is the person that required the Navajo Nation and Peabody Coal implement such provisions. Should the EEOC succeed in this suit, Peabody Coal would be forced to incur monetary and injunctive relief based upon the government's requirement that Peabody Coal only give preference to Navajo Indians for employment on the reservation.

Thus, in the absence of the Secretary, complete relief cannot be accorded among the parties because of the inability of Peabody Coal to assert any claim against the SOI.

**(b)** **The Secretary Claims an Interest Relating to the Subject of this Action**

The second mutually exclusive prong of the necessary party analysis, deals with whether the absent party claims an interest in the pending suit. The EEOC contends that the SOI has no interest in this litigation. However, as demonstrated by the Secretary's involvement in the drafting and implementation of these leases, it is clear that the Secretary at the very least claims an interest in this litigation. Not only did the Secretary play an active role in approving the leases and requiring specific Navajo employment preference provisions, it appears that the SOI still is an integral part of the leases as the SOI retains the authority to terminate the lease in the even of non-compliance. (Peabody Coal Response, Exhibits B and C) See also Yavapai-Prescott Indian Tribe v. Watt, 707 F.2d 1072, 74 (9th Cir. 1983) (noting that Secretary possess the authority to terminate lease between commercial entity and Indian tribe).

For instance, as noted in Dawavendewa II, 276 F.3d at 1156, "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a

lease or contract, all parties who may be affected by the determination of the action are indispensable.  (quoting <u>Lomayaktewa v. Hathaway</u>, 520 F.2d 1324, 1325 (9th Cir 1975).  Specifically, in <u>Dawavendewa II</u>, the Ninth Circuit found the Navajo Nation to possess an interest in the suit because of its status as a contracting party to the lease agreements at issue and the possibility that an adverse ruling would threaten its contractual interests.  The same is true here with respect to the SOI.   While the Amended Complaint does not specifically seek to set aside or cancel the lease provisions at issue; the effect of a favorable ruling in support of the EEOC undoubtedly implicates such a possibility given that Peabody Coal could be bound by a judgement that is inconsistent with the Navajo preference provisions in the 8580 and 9910 leases.  In the event Peabody Coal fails to comply with the Navajo employment preference provisions, the SOI would be faced with a decision as to whether to take any action by terminating the leases.  The EEOC argues that cancellation of the leases is not a realistic possibility given the revenue generated for the Navajo Nation based leases with such provisions.  However, the EEOC's argument is speculative and it cannot be disputed that a favorable result for the EEOC undoubtedly impacts the lease provisions at issue given that the provisions expressly require preferential hiring treatment to Navajo Native Americans.  The mere fact that the question is posed as to what the SOI will do in the event of non-compliance by Peabody Coal demonstrates that the Secretary claims an interest in this litigation.  The EEOC, by arguing that Secretary will not act to cancel the leases containing the Navajo preference provisions, is in effect taking on the role of the SOI.

**(i)      Disposition of this Action in the SOI's Absence Would Impede or Impair the Secretary's Ability to Protect that Interest**

The EEOC contends that if the Court were to determine that the SOI possesses an interest in this litigation, in any event, the SOI's absence from this suit does not impair or impede the Secretary's interest.  Specifically, the EEOC argues that this lawsuit does not seek affirmative relief against the Navajo Nation, but rather binds the Navajo Nation to this suit as well as bars it from any future challenge to enforce the Navajo employment preference provisions at issue.  (EEOC Response, p. 25).  Thus, the EEOC argues  that this litigation

cannot prevent the Secretary from continuing to approve tribal preference provisions in future leases.   However, again this argument ignores the impact of a favorable result for the EEOC in this litigation.  Undoubtedly, such a judgment would impact these and other related Navajo preference provisions between the Secretary, Navajo Nation and private non-Navajo businesses governed by or seeking lease agreements.  Moreover, no other party can represent the Secretary's interest in this suit.  As such, the Secretary's absence would impair or impede the Secretary's ability to protect this interest.

**(ii)        Non-Joinder of the SOI Creates a Substantial Risk of Multiple, Inconsistent Obligation to Existing Parties**

Moreover, the EEOC contends that even if this Court were to find that the SOI has an interest in this suit, there is  nothing to suggest that any of the existing parties would be subject to a substantial risk of multiple or inconsistent obligations in the Secretary's absence. As mentioned above, the EEOC contends there is no risk that the Secretary would cancel or modify the lease agreements to the detriment of Peabody Coal.  In other words, the EEOC contends that even if Peabody Coal and the Navajo Nation were bound by a favorable judgment in support of the EEOC, such a judgment would not create a substantial risk of inconsistent obligations to Peabody Coal even though Peabody Coal would be bound by a monetary and injunctive judgment against it as well as face lease termination by the SOI.

As noted above, the EEOC's argument is speculative, substitutes the EEOC's judgment for that of the Secretary's and does not provide persuasive evidence of the absence of the risk of inconsistent obligations.  Rather, the opposite is true.  The Ninth Circuit in this case noted this exact dilemma, but did so in relation to the Navajo Nation, the other party to the lease agreement.  Peabody W .Coal. 400 F.3d  at 780.  Now, even though the Navajo Nation is joined to this lawsuit the same problem is created by the absence of the Secretary should the EEOC prevail: "comply with the injunction prohibiting the hiring preference policy or comply with the lease requiring it." Id.  The Secretary's authority includes the authority to terminate or cancel the lease agreements should there be a breach by a contracting party, such as Peabody Coal.  (Peabody Coal's Response, Exhibits B and C).  Thus, again Peabody Coal

1   is stuck between the "proverbial rock and a hard place," that was created in the absence of
2   the Navajo Nation.

3     It is clear that the SOI is a necessary party to this litigation because both mutually
4   exclusive prongs of Rule 19(a) Fed.R.Civ.P. are satisfied.

5     **(2)**  **Feasibility of Joinder of SOI**

6     It is well established that the United States is not subject to suit absent its consent.
7   United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767 (1942) (holding that United
8   States, as sovereign, is immune from suit save as it consents to be sued); Gilbert v. DaGrossa,
9   756 F.2d 1455, 1457 (9th Cir. 1985).  Moreover, the EEOC is statutorily barred from bringing
10  suit against the United States absent its consent.  See 42 U.S.C.A. § 2000e-5(f)(1).  Lastly,
11  unlike the situation in joining the Navajo Nation to this litigation in order to provide for
12  complete relief between the parties, there is no authority suggesting that such action is proper
13  when the absent party is the United States.  The Ninth Circuit in Peabody W. Coal, 400 F.3d
14  at 781, determined it feasible to join the Navajo Nation to this litigation because in suits
15  asserted by the EEOC, the Nation's tribal sovereign immunity does not bar suits asserted by
16  the United States.  However, there is no authority suggesting that this ruling can be expanded
17  to join the United States in similar situations.  As such, it is not feasible to join the SOI to the
18  present litigation absent his consent.

19    **(3)**  **SOI as Indispensable Party**

20    Finally, the last step in this analysis, requires the Court to determine if the SOI is an
21  indispensable party requiring the dismissal of this action.  As noted above, "[a] party is
22  indispensable if in 'equity and good conscience,' the court should not allow the action to
23  proceed in its absence." Dawavendewa II, 276 F.3d at 1161 (citations omitted).  To make this
24  determination, courts balance four factors: (1) the prejudice to any party or the absent party;
25  (2) whether relief can be shaped to lessen prejudice; (3) whether an adequate remedy, even
26  if not complete, can be awarded without the absent party; and (4) whether there exists an
27  alternative forum.  Id. (citations omitted).

28

First, this Court has discussed at length the prejudice created by the absence of the SOI from this suit.  See Clinton v. Babbitt, 180 F.3d 1081, 1090 (9th Cir. 1999) (noting that prejudice test under Rule 19(b) is essentially the same as necessary party inquiry under Rule 19(a)).  Most notably, as discussed above, that with the Secretary's absence Peabody Coal will still be stuck between the "proverbial rock and hard place" which the Ninth Circuit cited when the Navajo Nation was the absent party from this suit.   Peabody W .Coal. 400 F.3d at 780.   The evidence submitted by the Parties demonstrates the SOI's integral role in establishing the leases at issue, and others like it, as well as the Secretary's continuing role in these leases including the authority with respect to cancellation were the lessee to breach a contractual provision of the lease, such as the Navajo preference provision.

Second, there does not appear to be any relief that can be shaped to lessen prejudice.  As with the earlier procedure posture of this case, if the EEOC were to succeed, Peabody Coal would again be prejudiced facing the possibility of complying with the Court's judgment while balancing the possibility of lease non-compliance.  There is no way to lessen such prejudice.

Third, there does not appear to be an adequate remedy, even if not complete, that can be awarded without the SOI.  The EEOC argues simply that relief can be accorded based upon the EEOC obtaining monetary and injunctive relief against Peabody Coal and barring the Navajo Nation from a subsequent challenge because of res judicata.  Further, the EEOC cites its position that there is no risk that the Secretary would invalidate any of the leases based upon Peabody Coal's compliance with the Court's judgment.  However, it is clearly not an adequate remedy to proceed with this litigation placing Peabody Coal and the Navajo Nation at odds with the Secretary's requirement that the leases at issue and others like it possess Navajo preference provisions.

Fourth, and finally, it is not disputed that there is no alternative forum should the Court dismiss the instant litigation.  In such situations, the district court must be extra cautious before dismissing the suit.  Mikah Indian Tribe v. Verity, 910 F.2d 555, 560 (9th

Cir. 1990).   However, the lack of an alternative forum does not automatically preclude dismissal of a suit.   E.g. Confederated Tribes of the Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1500 (9th Cir. 1991).   Moreover, the situation presented in this case is not unlike the situation previously encountered by this Court in determining dismissal appropriate based upon the Court's determination that the Navajo Nation is a necessary party that cannot be joined to this litigation.   However, this time it is the United States that is the subject of the sovereign immunity.   The Ninth Circuit has noted that in such situations where the necessary party is immune from suit, there is little need for balancing.   Id. at 1499.   Thus, although there is no alternative forum available, given the immunity governing the SOI, the Court finds that the factors of Rule 19(b) support dismissal.

## VII.   Summary

This Court finds that the dismissal of the EEOC's lawsuit is warranted for several reasons.   First, the EEOC is currently seeking affirmative relief against the Navajo Nation in the form of injunctive relief enjoining the Navajo Nation from requiring and enforcing its Navajo employment preference provisions.   This affirmative relief is contrary to Title VII's exemption of Indian tribes from suit.   Because the Navajo Nation is immune from such suit it cannot be a party to this litigation thus making it a necessary and indispensable party pursuant to Rule 19 Fed.R.Civ.P.   Second, because the EEOC is seeking such affirmative relief against the Navajo Nation, the EEOC's suit is contrary to the Rules Enabling Act and runs afoul of proper procedural requirements when asserting a suit against a government respondent.   Third, the Rehabilitation Act expressly authorizes the employment preference provisions at issue in this litigation, thus invalidating the EEOC's claims as a matter of law. Fourth and finally, this Court finds that even if the EEOC has properly brought suit against Peabody Coal and the Navajo Nation regarding the current Navajo employment preference given, its suit fails as the SOI is a necessary party that cannot be joined to this litigation and is indispensable pursuant to Rule 19 Fed.R.Civ.P.

**Accordingly,**

1    **IT IS HEREBY ORDERED** granting the Navajo Nation's Motion to Dismiss, which

2    has been converted into a Motion for Summary Judgment. (Dkt.#89).

3    **IT IS FURTHER ORDERED** granting the Navajo Nation's Motion to Strike

4    Exhibits 9 and 16 of the EEOC's Response to the Navajo Nation's Motion to Dismiss.

5    (Dkt.#124).  In addition, the Court did not consider the newspaper articles cited in footnote

6    5 of the EEOC's Response.

7    **IT IS FURTHER ORDERED** denying the EEOC's Motion to Strike Exhibits D and

8    E to Peabody Coal's Response to the Navajo Nation's Motion to Dismiss.  (Dkt.#134-2).

9    **IT IS FURTHER ORDERED** denying the Navajo Nation's Motion for Leave to File

10   Notice of Supplemental Authority as moot.  (Dkt.#140).

11

12   **IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

13   DATED this 30th day of September, 2006.

14

15

16   _____

17   Mary H. Murguia
     United States District Judge

18

19

20

21

22

23

24

25

26

27

28