John F. Lomax, Jr. (#020224)
Kathryn Hackett King (#024698)
SNELL & WILMER L.L.P.
400 E. Van Buren Street
Phoenix, AZ  85004-2202
Telephone: (602) 382-6305
Facsimile: (602) 382-6070
jlomax@swlaw.com
kking@swlaw.com

Attorneys for Defendant/Third Party Plaintiff and
Counterclaimant Peabody Western Coal Company

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>Plaintiff,<br><br>v.<br><br>Peabody Western Coal Company,<br><br>Defendant,<br><br>and<br><br>Navajo Nation,<br><br>Rule 19 Defendant. | Case No. CV-01-01050-JWS<br><br>**DEFENDANT PEABODY WESTERN COAL COMPANY'S THIRD PARTY COMPLAINT AND COUNTERCLAIM** |
| Peabody Western Coal Company,<br><br>Third Party Plaintiff,<br><br>v.<br><br>Larry J. Echo Hawk, in his official capacity as the Assistant Secretary for Indian Affairs of the United States of America, and Kenneth L. Salazar, in his official capacity as the Secretary of the Interior of the United States of America,<br><br>Third Party Defendants. | |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

59900.0001\LOMAXJ\SWDMS\13871939

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Peabody Western Coal Company,

                Counterclaimant,

v.

P. David Lopez, in his official capacity as the General Counsel of the Equal Employment Opportunity Commission, and Jacqueline A. Berrien, in her official capacity as the Chair of the Equal Employment Opportunity Commission,

                Counterdefendants.

For its Third Party Complaint and Counterclaims, Peabody Western Coal Company ("PWCC") seeks relief from the government officials who maintain conflicting positions on a matter of federal law of great import to PWCC's mining operations on tribal lands. By their failure to resolve their conflicting positions on the law governing PWCC's employment practices at these operations, these officials are responsible for putting PWCC in a position the Court of Appeals has found to be "profoundly unfair," leaving PWCC between the "proverbial rock and a hard place." For its Third Party Complaint, PWCC names as Third Party Defendants Larry J. Echo Hawk, in his official capacity as the Assistant Secretary for Indian Affairs of the United States of America, and Kenneth L. Salazar, in his official capacity as Secretary of the Interior of the United States of America (together, "Secretary"). For its Counterclaims, PWCC names as Counterdefendants P. David Lopez in his official capacity as General Counsel of the Equal Employment Opportunity Commission and Jacqueline A. Berrien, in her official capacity as Chair of the Equal Employment Opportunity Commission (together, "the EEOC").

## Nature of the Action

1.      PWCC is in the middle of a dispute not of its own making. In this pleading, PWCC seeks to remedy the predicament it faces under the inconsistent demands of two federal agencies.

2.      PWCC brings this action under the Administrative Procedure Act, 5 U.S.C.

§§ 701-706 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

3.     In this Third Party Complaint and Counterclaims, PWCC seeks:

a)     A declaration whether the EEOC's assertion in this case -- that the tribe-specific employment preference provisions in PWCC's leases with the Navajo Nation are inconsistent with Title VII of the Civil Rights Act -- is correct or not; and

b)     A declaration whether the Secretary's mandate and approval of the tribe-specific employment preference provisions in PWCC's leases with the Navajo Nation are i) lawful for reasons beyond the scope of Title VII or consistent with Title VII or ii) whether they are not lawful; and

c)     An order declaring which of these conflicting agency views of PWCC's obligations under federal law is in excess of statutory jurisdiction, authority, or limitations, or otherwise not in accordance with law; and

d)     Injunctive relief prohibiting either agency, or both agencies, from taking any action against PWCC inconsistent with this Court's declaration of PWCC's rights and obligations under both Title VII and its leases with the Navajo Nation.

### Parties

4.     PWCC is a corporation organized and existing under the laws of the state of Delaware.

5.     Defendant Larry J. Echo Hawk is the Assistant Secretary of the Interior for Indian Affairs.  His office address is 1849 C Street, N.W., Washington, D.C. 20240.

6.     Defendant Kenneth L. Salazar is the Secretary of the Interior of the United States of America.  His office address is 1849 C Street, N.W., Washington, D.C. 20240.

7.     Defendant P. David Lopez is the General Counsel of the Equal Employment Opportunity Commission.  His office address is 131 M Street N.E., Washington, D.C. 20507.

8.     Defendant Jacqueline A. Berrien is the Chair of the Equal Employment

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

59900.0001\LOMAXJ\SWDMS\13871939

- 3 -

Opportunity Commission.  Her office address is 131 M Street N.E., Washington, D.C. 20507.

9.     Together, Defendants Echo Hawk and Salazar are responsible for the administration and supervision of the United States Bureau of Indian Affairs.  Together, defendants Echo Hawk and Salazar are responsible for the administration and supervision of all matters pertaining to the Indian affairs of the United States that Congress has vested in the Secretary of the Interior.

10.    Together, Defendants Lopez and Berrien are responsible for the administration and supervision of the Equal Employment Opportunity Commission's enforcement conduct under Title VII of the Civil Rights Act of 1964, as amended.

## Jurisdiction and Venue

11.    This Court has personal jurisdiction over the parties.  This Court also has subject matter jurisdiction over the claims in the Third Party Complaint and Counterclaim under 28 U.S.C. §§ 1331, 1346(a)(2), 1367, 2201 and 5 U.S.C. § 703.

12.    The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, authorizes this Court to declare the rights and other legal relations of interested parties in a dispute, whether or not further relief is or could be sought.

13.    The Administrative Procedure Act, 5 U.S.C. §§ 701-706, authorizes judicial review of the Secretary's and the EEOC's actions and of their failures to act.

14.    Venue in this Court is proper under 28 U.S.C. §§ 1391(b)(2), 1391(e)(2), and 1402(a)(1) and 5 U.S.C. § 703 as a substantial part of the events giving rise to this action occurred on lands within the territory of the United States District Court for the District of Arizona and PWCC is subject to personal jurisdiction within the District of Arizona.

## General Allegations

15.    PWCC mines coal at the Kayenta Mine on the Navajo Reservation in

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Arizona pursuant to two mineral leases with the Navajo Nation. PWCC also has a separate lease with the Hopi Tribe which is part of the Kayenta Mine. A predecessor-in-interest to PWCC, Sentry Royalty Co., entered into those leases.

16.    On or about February 1, 1964, the Navajo Nation and Sentry Royalty Co. entered into a coal mining lease designated by the Bureau of Indian Affairs as Lease No. 14-20-0603-8580 ("Lease No. 8580") for certain lands on the Navajo Reservation.

17.    On August 28, 1964, the Secretary, through the Bureau of Indian Affairs, approved Lease No. 8580.

18.    Article XIX of Lease No. 8580 provides:

> Lessee agrees to employ Navajo Indians when available in all positions for which, in the judgment of Lessee, they are qualified, and to pay prevailing wages to such Navajo employees and to utilize services of Navajo contractors whenever feasible.

> Lessee shall make a special effort to work Navajo Indians into skilled, technical and other higher jobs in connection with Lessee's operations under this lease.

19.    PWCC's second lease with the Navajo Nation covers lands to the south of the lands in Lease No. 8580. These tribal lands were within the boundary of the Indian reservation created by an 1882 Executive Order, and were part of an area designated the Joint Use Area due to conflicting claims of the Navajo Nation and the Hopi Tribe to both the mineral resources and surface use ownership and control.

20.    In 1966, Sentry Royalty Co. and the Navajo Nation entered into a coal mining lease the Secretary prepared and designated Lease No. 14-20-0603-9910 ("Lease No. 9910") for the Navajo Nation's mineral and surface interests in a designated portion of the Joint Use Area.

21.    The Secretary, through the Bureau of Indian Affairs, approved Lease No. 9910 on July 7, 1966.

22.    Article XVII of Lease No. 9910 provides:

59900.0001\LOMAXJ\SWDMS\13871939

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1
2
3

> Lessee agrees to employ Navajo Indians when available in all positions for which, in the judgment of Lessee, they are qualified, and to pay prevailing wages to such Navajo employees and to utilize services of Navajo contractors whenever feasible.

4
5

> Lessee shall make a special effort to work Navajo Indians into skilled, technical and other higher jobs in connection with Lessee's operations under this lease. Lessee may at its option extend the benefits of this Article to Hopi Indians.

6
7

23.     In 1966, Sentry Royalty Co. and the Hopi Tribe entered into a coal mining lease that the Secretary prepared and designated Lease No. 14-20-0450-5743 ("Lease No. 5743") for the Hopi Tribe's mineral and surface interests in the same lands in the Joint Use Area that were the subject of Lease No. 9910.

8
9
10

24.     The Secretary, through the Bureau of Indian Affairs, approved Lease No. 5743 on June 20, 1966.

11

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

12

25.     Article XVII of Lease No. 5743 provides:

13
14
15
16

> Lessee agrees to employ Hopi Indians when available in all positions for which, in the judgment of Lessee, they are qualified, and to pay prevailing wages to such Hopi employees and to utilize services of Hopi contractors whenever feasible. Lessor may by agreement with the Navajo Indians extend the benefits of this article to the Navajo Indians.

17
18

> Lessee shall make a special effort to work Hopi and Navajo Indians into skilled, technical and other higher jobs in connection with Lessee's operations under this lease.

19
20
21
22
23

26.     The Secretary has approved amendments to Lease Nos. 5743, 8580 and 9910 on several occasions. The Secretary most recently approved amendments to Lease Nos. 8580 and 9910 in 1999. The tribe-specific employment preferences, however, in all three leases remain intact and have not been amended since the Secretary approved the original leases.

24
25
26

27.     The Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-396g ("IMLA"), authorizes tribes to lease their reservations' mineral resources "with the

1   approval of the Secretary of the Interior." 25 U.S.C. § 396a. Lease Nos. 5743, 8580, and

2   9910 were issued and approved under IMLA.

3         28.    The Secretary's rules and regulations implementing IMLA govern the

4   making, execution and approval of all IMLA leases, and govern all operations under such

5   leases. 25 U.S.C. § 396d. Those regulations have, since 1939, required that IMLA leases

6   be on forms prescribed by the Secretary. *See, e.g.,* 25 C.F.R. § 186.30 (1939); 25 C.F.R. §

7   171.30 (1965); 25 C.F.R. § 211.57 (2011). Since at least 1957, the prescribed IMLA solid

8   mineral lease form has required employment preferences for members of the lessor tribe.

9         29.    Under Lease Nos. 8580 and 9910, the Secretary has the power to take

10  enforcement action if PWCC may have violated one of its obligations under the leases.

11  The applicable regulations appear at 25 C.F.R §§ 211.1 *et seq.* Under those regulations,

12  the Secretary has the power to issue a notice of noncompliance, a notice of proposed lease

13  cancellation, or a notice of proposed monetary penalty to PWCC, and order cessation of

14  mining, if the Secretary determines that PWCC has violated its obligations under Lease

15  Nos. 8580 and 9910. *See* 25 C.F.R. §§ 211.54 and 211.55.

16        30.    In 1964, Congress adopted Title VII of the Civil Rights Act of 1964. As

17  amended, that law generally prohibits employers that employ 15 or more employees from

18  discriminating against an individual with respect to the terms, conditions, or privileges of

19  employment because of the individual's race, color, national origin, sex, or religion.

20        31.    Title VII established the EEOC (or "the Commission") and provides that the

21  Chair "shall be responsible on behalf of the Commission for the administrative operations

22  of the Commission." The statute also established the position of General Counsel of the

23  EEOC and provides that the "General Counsel shall have responsibility for the conduct of

24  litigation" unless the defendant is a governmental entity.

25        32.    Title VII, as originally enacted, stated that "[n]othing in this title shall apply

26  to any business or enterprise on or near an Indian reservation with respect to any publicly

59900.0001\LOMAXJ\SWDMS\13871939

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

announced employment practice of such business or enterprise under which a preferential treatment is given to any individual because he is an Indian living on or near a reservation." 42 U.S.C. § 2000e-2(i).

33.    In 1988, the EEOC issued a Policy Statement interpreting the meaning and scope of the preference provision in § 2000e-2(i).  That statement also noted the EEOC's position that "extension of an employment preference on the basis of tribal affiliation is in conflict with and violates" § 2000e-2(i).  The 1988 Policy Statement did not mention the Secretary's practice of requiring and approving tribe-specific employment preferences.

34.    PWCC has in good faith tried to comply with the obligations of its leases with the Navajo Nation and federal civil rights laws.

35.    The EEOC began investigating PWCC's employment practices in 1998. During that investigation the EEOC sought and obtained from PWCC copies of Lease Nos. 5743, 8580 and 9910.

36.    Before initiating a lawsuit, Title VII requires the EEOC to engage in conciliation with the employer if it believes a violation has occurred.  At no time during the EEOC's attempted conciliation did it consider or discuss the Secretary's role in the potential lawsuit.

37.    The EEOC filed its Complaint against PWCC in June 2001.  During limited discovery in 2006, the EEOC deposed former Secretary of the Interior Stewart Udall. Secretary Udall was the Secretary at the time that Lease Nos. 8580 and 9910 were approved.  He testified that he was personally involved in the process and that he viewed the Navajo-Hopi Rehabilitation Act of 1950 as authorizing the tribe-specific employment preferences.  That statute expressly provides for tribe-specific employment preferences.

38.    Upon information and belief, the EEOC never consulted or discussed the tribe-specific employment preferences in PWCC's Lease Nos. 5743, 8580, and 9910 with the Secretary in office between 1998 and late 2010.  Despite more than 10 years of

59900.0001\LOMAXJ\SWDMS\13871939

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

litigation, the EEOC has shown no willingness to accept the Secretary's endorsement of tribe-specific employment preferences.

39.    The EEOC takes the positions that tribe-specific employment preferences violate Title VII of the Civil Rights Act of 1964 and that no other provisions of federal law, including federal Indian law and federal statutes applicable to PWCC's conduct of mining under Lease Nos. 8580 and 9910, authorize tribe-specific employment preferences.

40.    Since the enactment of Title VII of the Civil Rights Act of 1964, the Secretary has issued no rule or order of general applicability that either consents to or objects to the EEOC's positions (set out in paragraph 39 above), or that otherwise instructs parties who have contractual obligations to use tribe-specific employment preferences, whether those obligations are unenforceable as in violation of public policy, or remain effective and in force.

41.    Since the enactment of Title VII of the Civil Rights Act of 1964, the Secretary, in the administration and enforcement of his responsibilities under the IMLA and its implementing regulations, has never issued any notice or instruction to PWCC that instructs PWCC that its contractual obligation to use tribe-specific employment preferences in its on-reservation business is unenforceable as in violation of public policy.

42.    The Secretary was at all relevant times and is authorized to issue a rule or order of general applicability as referred to in paragraph 40 and to issue a notice or instruction to PWCC as referred to in paragraph 41.

43.    To the extent that this Court finds the tribe-specific employment preferences in Lease Nos. 8580 and 9910 violate Title VII, the Secretary caused and directed that violation, or alternatively sanctioned, condoned, tolerated, or otherwise failed to act to stop the allegedly unlawful conduct of PWCC.  Further, the Secretary has done nothing to alleviate PWCC's conflicting obligations as reflected in the inconsistent positions held by

59900.0001\LOMAXJ\SWDMS\13871939

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1    two federal agencies.  The Secretary's actions and failures to act continue to this day.

2         44.    To the extent that this Court finds the tribe-specific employment preferences

3    in Lease Nos. 8580 and 9910 do not violate Title VII or are lawful for reasons beyond the

4    scope of Title VII, the EEOC's initiation and continued sanction and maintenance of this

5    lawsuit is beyond the EEOC's authority and inconsistent with federal law.  The EEOC has

6    done nothing to alleviate PWCC's conflicting obligations as reflected in the inconsistent

7    positions held by two federal agencies.  The EEOC's actions and failures to act continue

8    to this day.

9         45.    The Secretary's and the EEOC's conduct in failing to resolve the two

10    agencies' conflicting views of federal law and subjecting PWCC to litigation without first

11    resolving their conflict over what the law is has inflicted irreparable harm on PWCC.

12         46.    PWCC has spent considerable time, effort, and financial resources

13    defending itself in this lawsuit.

14         47.    By forcing PWCC to choose between complying with the tribe-specific

15    employment preference provisions of Lease Nos. 8580 and 9910 sanctioned by the

16    Secretary or abiding by the EEOC's view of Title VII and risking lease cancellation, mine

17    operation cessation orders, and monetary penalties, the Secretary and the EEOC have

18    improperly put PWCC in an untenable position.

19         48.    The Court of Appeals has ruled in this case that the Secretary is a person

20    required to be joined if feasible within the meaning of Rule 19(a) of the Federal Rules of

21    Civil Procedure.

22         49.    The Court of Appeals has ruled in this case that PWCC may file an

23    impleader complaint and "that prospective relief in the form of an injunction or

24    declaratory relief is available in a Rule 14(a) impleader against the Secretary."

25

26

59900.0001\LOMAXJ\SWDMS\13871939

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

# THIRD PARTY COMPLAINT

## Count I

### Declaratory Judgment Act

50.     PWCC realleges and incorporates by reference the preceding paragraphs.

51.     PWCC is an interested party under the Declaratory Judgment Act.  PWCC has an interest in Leases Nos. 8850 and 9910, has made a substantial economic investment in those leases and has a significant ongoing financial interest in maintaining those leases. PWCC has an interest in abiding by the laws enforced by the Secretary.

52.     PWCC does not know whether the tribe-specific employment preference provisions in Lease Nos. 8580 and 9910 are i) lawful under Title VII or lawful for reasons beyond the scope of Title VII, or ii) unlawful under Title VII.

53.     The federal government lacks a unified position on the lawfulness of tribe-specific employment preferences.  The EEOC maintains such preferences are unlawful under Title VII.  The Secretary maintains they are lawful for reasons beyond the scope of Title VII or are lawful under Title VII.  The two agencies have been unwilling or unable to resolve the dispute themselves.

54.     This Court has the authority to issue a declaration stating that the tribe-specific employment preferences in Lease Nos. 8580 and 9910 are lawful for reasons beyond the scope of Title VII, or if not, whether they are lawful.

55.     Such a declaration would promote judicial efficiency, resolve long-running disputes between the parties to this lawsuit, and promote the rule of law as it would educate PWCC and other private parties doing business with the Secretary or the Navajo Nation.

59900.0001\LOMAXJ\SWDMS\13871939

- 11 -

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

## Count II
### Administrative Procedure Act

56.    PWCC realleges and incorporates the preceding paragraphs.

57.    The Secretary is an "agency" as that term is defined in the Administrative Procedure Act.

58.    PWCC is a "person" as that term is defined in the Administrative Procedure Act.

59.    The Secretary mandated, drafted, and approved the Navajo employment preference language in Lease Nos. 8580 and 9910.  Upon information and belief, the Secretary has required similar tribe-specific employment preferences in every IMLA mining leases of Navajo Nation reservation lands since at least 1942.

60.    Upon information and belief, the Secretary has prescribed similar tribe-specific employment preferences in grants made by the Secretary for rights-of-way crossing Navajo reservation lands.  Upon information and belief, the Secretary has required or approved similar tribe-specific employment preferences in at least 326 business site leases of Navajo Nation reservation lands.

61.    Upon information and belief, the Secretary continues to use mineral lease forms that require tribe-specific employment preferences.

62.    The Secretary has never advised PWCC to abandon, ignore or treat as unenforceable the employment preference provisions in Lease Nos. 8580 and 9910.

63.    The Secretary caused, directed, and condoned PWCC's conduct with respect to the tribe-specific employment preferences and, to the extent one occurred, any violation of Title VII.  The Secretary is responsible for any PWCC conduct that gives rise to the EEOC's claim for injunctive relief against PWCC.

64.    The Secretary's conduct, continuing sanction of PWCC's conduct, and failures to act are agency actions under the Administrative Procedure Act.

59900.0001\LOMAXJ\SWDMS\13871939

65.    To the extent the Court rules that the tribe-specific employment preferences violate Title VII and no defense immunizes PWCC from the injunctive relief sought by the EEOC, the Secretary's actions and failures to act are arbitrary, capricious, an abuse of discretion, and in violation of federal law.

66.    The Secretary's actions and failures to act are subject to judicial review as PWCC has suffered a legal wrong, and has been adversely affected and aggrieved, by the Secretary's conduct.

67.    The Secretary's failures at any time over the last 45 years -- to provide clarity by rule or notice to PWCC on what the law is with respect to tribe-specific employment preferences in mining leases on tribal lands and to resolve its differences with the EEOC over that issue -- constitute "agency action unlawfully withheld or unreasonably delayed" within the meaning of 5 U.S.C. § 706(1).

68.    The Administrative Procedure Act, 5 U.S.C. § 706(1) authorizes this Court to compel agency action unlawfully withheld or unreasonably delayed.

69.    PWCC has suffered and continues to suffer irreparable harm by defending this lawsuit and because its rights and interests vis-à-vis the Secretary and the EEOC and the Navajo Nation are undefined by the two conflicting federal agencies.

## COUNTERCLAIMS

### Count I
### Declaratory Judgment Act

70.    PWCC realleges and incorporates the preceding paragraphs.

71.    As described in paragraph 51 above PWCC is an interested party under the Declaratory Judgment Act and has an interest in Lease Nos. 8580 and 9910.  PWCC also has an interest in abiding by the laws enforced by the EEOC.

72.    As alleged above, PWCC does not know whether tribe-specific employment preferences are lawful under Title VII, lawful for reasons beyond the scope of Title VII,

or unlawful under Title VII. The federal government lacks a unified position on this issue, and the Secretary and the EEOC have been unwilling or unable to resolve their conflicting positions themselves.

73. This Court has the authority to issue a declaration stating whether tribe-specific employment preferences are beyond the scope of Title VII, and if not, whether those provisions are lawful. If the Court finds that such provisions are lawful for reasons beyond the scope of Title VII or lawful under Title VII, the Court has the authority to issue a declaration that the initiation and maintenance of this lawsuit was improper, in violation of the law, and an abuse of discretion.

74. Such declarations would promote judicial efficiency and the rule of law, resolve long-running disputes between the parties to this lawsuit, and instruct PWCC and other private parties doing business on Navajo Nation lands subject to the Secretary's and the EEOC's regulation.

**Count II**
**Administrative Procedure Act**

75. PWCC realleges and incorporates the preceding paragraphs.

76. The EEOC is an "agency" as that term is defined in the Administrative Procedure Act.

77. PWCC is a "person" as that term is defined in the Administrative Procedure Act.

78. The EEOC drafted and approved the 1988 Policy Statement. The Policy Statement did not contemplate, or provide any indication that the EEOC contemplated, that the Secretary has mandated and approved tribe-specific employment preference provisions in both i) leases between lessor Indian tribes and private party lessees; and ii) in grants made by the Secretary for rights-of-way crossing Indian reservations.

79. Upon information and belief, the 1988 Policy Statement has never been a

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

subject of formal rule making by the EEOC. The EEOC has not issued any regulations dealing with tribe-specific employment preferences. Upon information and belief, the 1988 Policy Statement serves as the EEOC's justification for this lawsuit.

80.    The United States government has advised the Supreme Court twice that tribe-specific employment preferences may be lawful notwithstanding the EEOC's view of tribe-specific employment preferences under Title VII.

81.    In an Amicus Brief in <u>Salt River Project Agricultural Improvement and Power District v. Dawavendewa</u>, No. 98-1628, the United States opposed a petition for certiorari and noted the U.S. Court of Appeals for the Ninth Circuit did not address whether i) the preference should be viewed as a political classification; ii) the preference should be viewed as having the effect of preferring persons on the basis of political affiliation rather than national origin; iii) the preference could be justified as job related and consistent with business necessity; iv) the treaty between the Navajo Nation and the United States justified the preference; or v) an Act of Congress governing the leasing or other use of property held in trust for a Tribe or its members justified the preference. The EEOC's General Counsel and three other members of the EEOC's legal staff appeared on the signature page of the <u>Dawavendewa</u> brief. The brief was filed in 1999, more than 18 months before the EEOC filed suit in this matter.

82.    By virtue of participating in that briefing, the EEOC knew before this lawsuit began that several possible justifications for tribe-specific employment preferences existed. Yet, the EEOC brought this action without seeking to resolve its conflicting view of tribe-specific preferences with the Secretary.

83.    In the second brief, the United States responded to PWCC and the Navajo Nation's petitions for certiorari in this case. In that brief, the United States again observed that tribe-specific employment preferences might be regarded "as a political classification rather than a classification based on national origin – and thus beyond the scope of Title

59900.0001\LOMAXJ\SWDMS\13871939

1   VII." The EEOC, through its General Counsel and two other lawyers, appeared on the

2   signature page of that brief.

3       84.   Despite express recognition by the EEOC's Office of General Counsel that

4   the conduct it attacks in this lawsuit may be lawful for reasons beyond the scope of Title

5   VII, the EEOC persists in prosecuting this action.

6       85.   The EEOC has no authority under Title VII to challenge conduct that is

7   lawful for reasons beyond the scope of Title VII, and it has failed to determine whether

8   the conduct it seeks to enjoin in this lawsuit is lawful for reasons beyond the scope of

9   Title VII.

10      86.   The EEOC's continued prosecution, sanction, and maintenance of this

11  lawsuit, and its failures to act are agency actions under the Administrative Procedure Act.

12      87.   If the Court finds the tribe-specific employment preferences are lawful

13  under Title VII or lawful for reasons beyond the scope of Title VII, the EEOC's continued

14  prosecution, sanction and maintenance of this lawsuit constitutes arbitrary and capricious

15  conduct and an abuse of discretion in violation of federal law.

16      88.   The EEOC's actions and failures to act are subject to judicial review as

17  PWCC has suffered a legal wrong, and has been adversely affected and aggrieved, by the

18  EEOC's conduct.

19      89.   The EEOC's failure at any time over the last 13 years to resolve its dispute

20  with the Secretary or to announce that the tribe-specific employment preference

21  provisions in all IMLA leases or in Lease Nos. 8580 and 9910 are lawful for reasons

22  beyond the scope of Title VII or consistent with Title VII constitutes "agency action

23  unlawfully withheld or unreasonably delayed" within the meaning of 5 U.S.C. § 706(1).

24      90.   The Administrative Procedure Act, 5 U.S.C. § 706(1) authorizes this Court

25  to compel agency action unlawfully withheld or unreasonably delayed.

26      91.   PWCC has suffered and continues to suffer irreparable harm in defending

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

59900.0001\LOMAXJ\SWDMS\13871939

- 16 -

1    this lawsuit and because its rights and interests vis-à-vis the Secretary, the EEOC, and the

2    Navajo Nation are undefined by the two conflicting federal agencies.

3                                          **Relief Requested**

4         WHEREFORE, in accordance with the Declaratory Judgment Act, 28 U.S.C. §§

5    2201-2202, and the Administrative Procedure Act, 5 U.S.C. §§ 701-706, PWCC seeks:

6         A.      A declaration that the Navajo employment preference provisions contained

7    in Lease Nos. 8580 and 9910 between the Navajo Nation and PWCC are i) lawful under

8    Title VII or lawful for reasons beyond the scope of Title VII, or ii) unlawful under Title

9    VII.

10        B.      To the extent the Court finds the tribe-specific employment preferences in

11   Lease Nos. 8580 and 9910 violate Title VII, a declaration that the Secretary caused the

12   Title VII violation and the Secretary's decisions -- to include those preference provisions

13   in the Leases and not to issue a notice or order that the parties ignore or abandon those

14   provisions -- are contrary to federal law, arbitrary and capricious, and an abuse of

15   discretion.

16        C.      To the extent the Court finds the tribe-specific employment preferences in

17   Lease Nos. 8580 and 9910 are lawful for reasons beyond the scope of Title VII or do not

18   violate Title VII, a declaration that the EEOC's decision to initiate and continue to

19   prosecute the lawsuit is contrary to federal law, arbitrary and capricious, and an abuse of

20   discretion.

21        D.      An injunction restraining the EEOC and the Secretary from taking actions

22   inconsistent with the foregoing declarations of PWCC's rights and obligations under both

23   Title VII and its leases with the Navajo Nation.

24        E.      All costs and fees allowed by law; and

25        F.      Such other and additional relief as the Court deems just and equitable.

26

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

59900.0001\LOMAXJ\SWDMS\13871939

1    DATED this 12th day of October, 2011.

2                                              SNELL & WILMER L.L.P.

3

4                                     By  s/ John F. Lomax, Jr.
                                          John F. Lomax, Jr.
5                                         Kathryn Hackett King
                                          One Arizona Center
6                                         400 E. Van Buren
                                          Phoenix, AZ  85004-2202
7                                         Attorneys for Defendant/Third Party
                                          Plaintiff Peabody Western Coal
8                                         Company

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

59900.0001\LOMAXJ\SWDMS\13871939

1

**CERTIFICATE OF SERVICE**

2

3

☒     I hereby certify that on October 12, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant.

4

5

6

7

8

9

Mary Jo O'Neill, Esq.
Andrea Baran, Esq.
James Driscoll-MacEachron, Esq.
Equal Employment Opportunity Commission
Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012-2504
*Attorneys for Plaintiff*

10

11

12

13

Paul Frye, Esq.
Frye Law Firm, P.C.
10400 Academy N.E., Suite 310
Albuquerque, NM 87111
*Attorneys for Rule 19 Defendant the Navajo Nation*

14

15

16

17

Harrison Tsosie
Attorney General
Navajo Nation Department of Justice
P.O. Box 2010
Window Rock, Navajo Nation, AZ  85615
*Attorneys for Rule 19 Defendant the Navajo Nation*

18

19

20

s/ Lori De Los Santos

21

22

23

24

25

26

*Snell & Wilmer*
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

59900.0001\LOMAXJ\SWDMS\13871939